UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BARRY K. DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:06-CV-42 |
| | ) | |
| FLEETWOOD MOTOR HOMES OF INDIANA, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Barry Duncan brings this suit against his current employer, Defendant Fleetwood Motor Homes of Indiana, Inc. ("Fleetwood"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*[1] (Docket # 1.)  Duncan asserts that Fleetwood discriminated against him due to his age and a perceived disability when it removed him from his customary position as a material handler and subsequently re-assigned him to work as an assembler, a position in which he earned less money.[2] (Compl. ¶¶ 18-36.)

Fleetwood now moves for summary judgment on all claims. (Docket # 17.)  For the reasons provided, Fleetwood's motion for summary judgment will be GRANTED.

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] While Duncan also advanced a retaliation claim in his Complaint (Compl. ¶¶ 25, 45), he failed to argue it in his response to Fleetwood's motion for summary judgment.  Thus, the Court deems Duncan to have abandoned any retaliation claim. *See, e.g.*, *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding that arguments not presented to the court in a response to a summary judgment motion are deemed waived).

## II. FACTUAL BACKGROUND[3]

Duncan, who is fifty-three years old, was hired by Fleetwood in 1987 to work as a material handler and served in that capacity until September 2004. (Aff. of Barry Duncan ¶ 3.) During his time as a material handler, Duncan never received any complaints about the quality of his work or his ability to perform any task, and he was never reprimanded or counseled about his work performance. (*Id.* ¶ 32.)

In December 2003, Duncan suffered a back injury at work while moving a box of steel drive shafts weighing between sixty to seventy pounds. (*Id.* ¶ 6; Aff. of Doug Hormann ¶ 4.) Though he received medical treatment for seven months after the injury, Duncan never missed a day of work as a result of the incident; he continued to work as a material handler even though his physician imposed temporary lifting restrictions. (Duncan Aff. ¶¶ 6-9; Hormann Aff. ¶ 7.) When confronted with a task that required lifting in excess of his restrictions, Duncan notified his supervisor; his supervisor then personally assisted Duncan or found another employee to help him. (Hormann Aff. ¶ 6.)

On July 13, 2004, Duncan visited his physician for a routine checkup concerning his back injury. (Duncan Aff. ¶ 10.)  At the visit, the physician noted that Duncan's back symptoms were improved and that he was working and performing normal activities, though he still experienced occasional discomfort while driving. (*Id.*)  The physician opined that Duncan had reached maximum medical improvement and released him from his temporary work restrictions, imposing no permanent restrictions. (*Id.*)  As a result, Duncan continued to work as a material handler. (*Id.* ¶¶ 7, 11.)

---

[3] For summary judgment purposes, the facts are recited in the light most favorable to Duncan, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

On July 23, 2004, Duncan saw a coworker wearing arm bands that he had received from the safety station. (*Id.* ¶ 12.)  The coworker told Duncan that the arm bands were designed to reduce elbow strain; consequently, Duncan visited the safety station to see whether he could also obtain some arm bands. (*Id.*)

While at the safety station, Duncan conversed with Cathy Smith, Fleetwood's first aid attendant. (*Id.* ¶ 13.)  After discussing the arm bands, Smith asked Duncan about his back. (*Id.*) Duncan explained to Smith that he still occasionally felt some minor pain in his leg and hip.[4] (*Id.*; Dep. of Barry Duncan at 52-53.)  However, at no time during the conversation did Duncan ask Smith for an accommodation, indicate that he was suffering from a disability because of his back, or suggest that his back condition was keeping him from performing any aspect of his work as a material handler. (Duncan Aff. ¶¶ 13, 14.)  Rather, Duncan perceived that he was merely keeping Smith informed of the status of his work-related injury, as he was instructed to do by his physician. (*Id.*)

Seemingly in response to his conversation with Smith, Duncan was later informed by Fleetwood that he would need to submit to a functional capacity evaluation ("FCE"). (*Id.* ¶ 15.) Though Duncan asked why he needed to undergo an FCE, Fleetwood never offered Duncan an explanation for its decision.[5] (*Id.* ¶ 15.)

On August 12, 2004, Duncan underwent an FCE administered by Carol Bennett, a

---

[4] Fleetwood contends that Duncan also complained of leg pain a few days earlier, when he refused to perform a task that required him to manipulate steel beams while climbing stairs. (Fleetwood's Statement of Undisputed Material Facts ¶ 8.)  Duncan disputes Fleetwood's contention, asserting that the task required two employees and that he merely asked his supervisor if he could perform the portion of the task that did not require climbing stairs. (Duncan Aff. ¶ 33.)

[5] To Duncan's knowledge, no other Fleetwood employee has been required to undergo an FCE. (*Id.* ¶ 15.)

physical therapist at Fort Wayne Orthopaedics. (*Id*. ¶ 16.)  For purposes of the FCE, Fleetwood supplied Bennett with a copy of its then-current job description of a material handler, which was created by its consultant, WorkSTEPS Employment Testing Program ("WorkSTEPS").[6] (Hormann Aff. ¶¶ 3, 5.)  The job description included an ergonomic job analysis (dated April 14, 2004) performed by WorkSTEPS that assigned the material handler position a "very heavy" rating under the Dictionary of Occupational Titles and indicated that a material handler must be able to lift and carry 97 pounds occasionally, 73 pounds frequently, and 10 pounds constantly, and must be able to push and pull a maximum force of 109 pounds.[7] (Hormann Aff. Ex. A.)

During the FCE Duncan did not demonstrate the ability to perform the job duties that required occasionally lifting 97 pounds and frequently lifting 73 pounds. (Hormann Aff. Ex. C.) Rather, the results of the FCE indicated that Duncan was qualified for "a medium level of work," not the "very heavy" work of a material handler. (*Id*.)  However, Duncan expressed to Bennett during the FCE that he was being asked to lift weight in excess of what he was required to lift on the job;[8] as a result, in her written report Bennett expressed concern about the veracity of the job description she had been provided by Fleetwood:

> A job description was provided from the employer.  [Duncan] has returned back to work successfully without restrictions.  A review of the job description did

---

[6] Fleetwood explains that it contracts with WorkSTEPS to create its job descriptions. (Hormann Aff. ¶ 3.) A representative of WorkSTEPS visits Fleetwood's job site to perform a hands-on evaluation of the physical requirements of employees in particular jobs, and WorkSTEPS then creates the job descriptions from the representative's findings. (*Id*.)

[7] The ergonomic job analysis states on its face that one of its outcomes is "the determination of one or more job specific tests that will either qualify or disqualify the post-offer or post-employment candidate for the position." (Hormann Aff. Ex. A.)

[8] Duncan contends that a material handler is never required to lift items that weigh 97 or 73 pounds without either mechanical assistance or the assistance of a coworker. (Duncan Aff. ¶ 17.)  In fact, Duncan "doubt[s] whether any of the other material handlers could lift and carry items of that weight occasionally or frequently." (*Id*. ¶ 22.)

4

>bring about questions regarding the accuracy of the job duties outlined. According to the job description, [Duncan] must be able to occasionally lift 97 pounds and frequently lift 73 pounds. At this point in time, [Duncan] does not demonstrate the ability to perform these job duties. [Duncan] was not familiar with some of the job duties outlined in the job description and, given the fact that he has returned to work successfully, it does bring the credibility of the job description a concern [sic].

(Hormann Aff. Ex. C; *see also* Duncan Aff. ¶¶ 17-19.)

After he received the results of the FCE, Dr. Reecer, the physician who treated Duncan for his back condition, assigned Duncan a permanent partial impairment rating of five percent and imposed the following permanent restrictions on Duncan:

>Floor to lifting is fifty pounds occasionally, 30 pounds frequently, and 15 pounds constantly. Waist to shoulder lifting is 60 pounds occasionally, 30 pounds frequently, and 15 pounds constantly. Overhead lifting is 45 pounds occasionally, 25 pounds frequently, and 15 pounds constantly. Carrying 30 feet is 50 pounds occasionally, 25 pounds frequently, and 15 pounds constantly. He is able to climb and carry 50 pounds occasionally, 25 pounds frequently, and 15 pounds constantly. Horizontal waist lifting is 90 pounds occasionally, 45 pounds frequently, and 30 pounds constantly. Squatting, kneeling, climbing, crawling are limited to an occasional basis. He is able to frequently bend and twist. Walking, standing, and sitting are constant.

(Hormann Aff. Ex. D; Duncan Aff. ¶ 20.)

After receiving the FCE results and Dr. Reecer's report, Tim Quinton, Fleetwood's Safety and Environmental Manager, met with Duncan and told him that he was not sure whether Duncan could continue to work as a material handler. (Duncan Aff. ¶ 23.) Duncan disputed Quinton's assessment, asserting that the job description used for the FCE was inaccurate and that he could perform his job as a material handler yet comply with his permanent restrictions. (*Id.*; Hormann Aff. ¶ 15.) Duncan, however, did not dispute the accuracy of the restrictions imposed upon him by Dr. Reecer. (Hormann Aff. ¶ 15.)

As a result, Fleetwood hired Shirley Drier, an occupational therapist at Corporate

5

Medical Services, to analyze the material handler position and compare it to Duncan's permanent restrictions. (Hormann Aff. ¶ 16, Ex. E.) "After an extensive tour of the facility and discussion and review of the many job duties required of a material handler," Drier determined that a material handler must have the ability to perform the following physical requirements:

- Employee lifts/carries 97 pounds occasionally.
- Employee lifts/carries 73 pounds frequently[.]
- Employee lifts/carries 10 pounds constantly.
- Employee push/pulls occasionally up to 109 pounds force.
- Employee occasionally squats, kneels, and crawls.
- Employee frequently climbs, bends, twists, stands, walks, and sits.

(Hormann Aff. Ex. E.)  Drier explained: "[A]lthough a specific job task on a given day might not require physical demands as listed above, all associates in this department are required to be able to perform any part of the job.  All associates might be moved from one job task to another within the department as production demands require." (*Id*.)  She then concluded that, due to his lifting restrictions, Duncan could not perform some of the job functions of a material handler and that if he continued to work as a material handler he was at high risk of further injury. (*Id*. ¶ 16, Ex. E; Duncan Aff. ¶ 24.)

Finally, on September 9, 2004, Fleetwood informed Duncan that he was being removed from his position as a material handler, explaining that the results of the FCE revealed that he could not perform the essential tasks of his job. (Duncan Aff. ¶ 26.)  When Duncan asked Fleetwood what tasks it believed he could not perform, Fleetwood did not answer and refused to provide him with a copy of a job description. (*Id*. ¶¶ 5, 26.)  Instead, Fleetwood told Duncan that he would be eligible for other open positions at Fleetwood and that it was his obligation to telephone Fleetwood every day to see whether a position opened up. (*Id*. ¶ 30.)

At the conclusion of the meeting, Duncan was escorted out of the plant ostensibly in a

6

manner that is reserved for terminated employees. (*Id.* ¶ 27.)  On his way out, Duncan asked Adam Stucky, one of Duncan's supervisors, why Fleetwood was doing this to him. (*Id.*)  Stucky responded that there were a lot of things that Duncan could not do anymore, just as there were a lot of things that he (that is, Stucky) could not do anymore. (*Id.*)  Duncan understood Stucky to mean that, given his back condition and his age, Duncan was no longer useful to the company and was perceived to be a liability. (*Id.*)

After his removal, Duncan repeatedly attempted to meet with Fleetwood management to determine why Fleetwood had removed him from his position as material handler, yet he received no explanation. (*Id.* ¶ 29.)  Eventually, Duncan learned that Fleetwood hired a younger worker, Jason Gerber, to replace him as a material handler. (*Id.* ¶ 28.)

As Fleetwood had instructed, Duncan called Fleetwood every day to see if it had any open positions.[9] (*Id.* ¶ 30.)  On or about November 4, 2004, Fleetwood offered Duncan a clerical position, which he declined. (Hormann Aff. ¶ 20.)  On or about December 9, 2004, Fleetwood offered Duncan a paint preparation job, which Duncan also turned down. (*Id.*)  Finally, on or about December 22, 2004, Duncan was informed that a position as an assembler had opened up. (*Id.*)  The position paid the same wage per hour as a material handler, but generally offered less of an opportunity to earn overtime. (*Id.*)  Duncan accepted the position and returned to work on January 3, 2005. (Duncan Aff. ¶¶ 30-31.)

On April 5, 2005, Duncan filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging retaliation and discrimination based on age and

---

[9] Upon his removal, Fleetwood placed Duncan on unpaid medical leave, and Duncan collected unemployment compensation until he returned to work as an assembler. (Hormann Aff. ¶¶ 17, 22.)

7

disability, and on November 18, 2005, the EEOC issued Duncan a Notice of Right to Sue. (Compl. Exs. A, B.) Duncan then filed the instant action in the district court on February 16, 2006. (Docket # 1.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### IV. DISCUSSION

Duncan asserts that Fleetwood discriminated against him due to his age and a perceived disability when it removed him from his customary position as a material handler and subsequently re-assigned him to work as an assembler. Duncan's claims under the ADEA and ADA will each be discussed in turn; however, neither claim is ultimately successful.

8

*A. Duncan's Age Discrimination Claim*

1. <u>Applicable Law</u>

A plaintiff alleging employment discrimination can contest summary judgment by using either the direct or indirect method of proof. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). The direct method requires the plaintiff to produce enough evidence, either direct or circumstantial, to create a triable issue of whether the adverse employment action had a discriminatory motive. *Id.*

The indirect method is the well-known *McDonnell Douglas* burden-shifting framework. *E.g.*, *id.* at 696. Here, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). For an ADEA claim, the *prima facie* case requires four showings: (1) the plaintiff was in the protected age group of forty or older; (2) the plaintiff was meeting the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) substantially younger, similarly-situated employees were treated more favorably.[10] *Debs v. Ne. Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998); *Ptasznik*, 464 F.3d at 696 (citing *McDonnell Douglas*, 411 U.S. at 802; *Rozkowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 614 (7th Cir. 2005)). If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

---

[10] "The Seventh Circuit has defined 'substantially younger' as generally ten years younger." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321-22 (7th Cir. 2003).

2.  Duncan Establishes a *Prima Facie* Case of Age Discrimination

Duncan advocates his ADEA claim solely under the indirect method of proof, that is, the *McDonnell Douglas* framework. (*See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. ("Resp. Br.") at 13.) For purposes of summary judgment, Fleetwood concedes that Duncan has established the first, second, and third elements of his *prima facie* case. (*See* Mem. of Law in Supp. of Fleetwood's Mot. for Summ. J. ("Opening Br.") at 11.) Fleetwood contends, however, that Duncan's claim fails on the fourth – that is, the "similarly-situated" – element.

In order to be considered similarly situated, an employee must be "directly comparable in all material respects." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 835 (7th Cir. 2005). Here, Duncan identifies Jason Gerber, the employee who replaced him as a material handler, as an individual similarly situated to him. Gerber is under forty years old and purportedly also suffered a work-related back injury, though he apparently did not complain of pain on the job and was not assigned any permanent restrictions.[11] (*See* Opening Br. at 12.) Succinctly, Duncan contends that he has satisfied the fourth prong of his case by showing that he was replaced with an employee more than ten years younger than him, contending that "[m]ore on this element is not required." (Resp. Br. at 14.)

Indeed, that is what the Seventh Circuit Court of Appeals essentially concluded in *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635-36 (7th Cir. 2004). In *Olson*, the Court held that Olson, who was performing up to his employer's expectations, had adequately established the fourth

---

[11] Fleetwood argued in its opening brief that Gerber was not similarly situated to Duncan because Gerber did not complain of pain when performing his job and was assigned no permanent limitations. (*See* Opening Br. at 11-12.) However, Fleetwood did not pursue this argument in its reply brief, instead emphasizing that its proffered reason for removing Duncan as a material handler was not pretextual. (*See* Fleetwood's Reply in Supp. of Summ. J. at 6-7.)

10

prong of his *prima facie* case of age discrimination by pointing to the substantially younger employee who replaced him, though the two had different academic credentials. *Id*.  In fact, the Court chastised the district court for rigidly adhering to the *McDonnell Douglas* test and ignoring a "stray remark" made by Olson's supervisor that "Olson's age made him undesirable in the business world," thereby skirting the ultimate question – whether Olson's age was a motivating factor in his termination. *Id*.  The Court stated:

> In an attempt to better reach the ultimate question of when, as here, an employee within a protected class has been discharged and replaced, we have required that the employee show only that he was performing his job to the employer's legitimate expectations and that the employer hired someone else who was substantially younger or other such evidence that indicates that it is more likely than not that his age . . . was the reason for the discharge.

*Id*. (internal quotation marks omitted); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."); *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir. 1990) ("Under the approach of *McDonnell Douglas*, applied to age discrimination cases, once the employee shows that he was replaced by a younger person even though he was performing up to his employer's expectations, the burden shifts to the employer to present evidence that the employee was replaced for a reason unrelated to his age or that of his replacement.").

   Duncan's argument is persuasive.  Like *Olson*, Duncan points to a substantially younger employee who replaced him as a material handler. *See Olson*, 387 F.3d at 686.  No dispute exists concerning Duncan's performance as a material handler, as Fleetwood, like the defendant in *Olson*, concedes for purposes of summary judgment that Duncan can adequately establish the first three elements of his *prima facie* case. *See Olson*, 387 F.3d at 635.  Also similar to *Olson*,

11

Duncan offers as evidence the "stray remark" from his supervisor, Stucky, that "there were a lot of things that [he] couldn't do anymore."  Thus, any potential dissimilarity between Duncan and Gerber essentially boils down to Gerber's "qualifications" for the job – in this case, that Gerber apparently did not complain of pain on the job and was not assigned permanent lifting restrictions.  However, in light of *Olson*, this dissimilarity by itself is insufficient to conclude that Gerber is not similarly-situated to Duncan.

Therefore, when taking the facts in the light most favorable to the plaintiff, Duncan has adequately satisfied the fourth prong and consequently, has established a *prima facie* case of age discrimination.

3.  <u>Duncan Fails to Establish that Fleetwood's Proffered Reason for Removing Him Was Pretextual</u>

Fleetwood proffered a legitimate, non-discriminatory reason for removing Duncan from the material handler position, that is, because the stated job requirements of a material handler require lifting weight in excess of Duncan's permanent lifting restrictions. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 n.8 (7th Cir. 1996) ("For a reason to be 'legitimate,' in the sense of sufficient to rebut a *prima facie* case, it need not be a good or sympathetic justification for what the employer did; it need only be nondiscriminatory and . . . explain why the challenged action was taken."); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994) (articulating that an employer's mere production of a legitimate, nondiscriminatory reason for its action rebuts the presumption of discrimination created by the *prima facie* showing).  Thus, it is now Duncan's burden to demonstrate that Fleetwood's proffered reason for removing him from the material handler position is a lie. *Ptasznik*, 464 F.3d at 696.

12

The focus of a pretext inquiry is "whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)); *see also Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground."). Simply put, pretext is "a deliberate falsehood." *Forrester*, 453 F.3d at 419.

Here, Duncan asserts that Fleetwood's proffered reason is a lie because Fleetwood failed to specifically identify any essential tasks of a material handler that Duncan cannot perform. More pointedly, he contends that Fleetwood manufactured a false job description in order to hire a younger employee as a material handler, a position he performed without incident for nearly ten months *after* his back injury. Duncan asserts that a "bona fide factual dispute [exists] regarding what tasks are required and what tasks [he] can perform" and that "[a] reasonable juror could find that Fleetwood manufactured the false job descriptions to justify replacing [him] with a younger worker." (Resp. Br. at 15.)

Duncan, however, fails to produce evidence giving rise to a reasonable inference that Fleetwood manufactured a false job description to discriminate against him. First of all, the employer, not the employee, has the authority to create the job description for its positions. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989) ("The employee doesn't get to write his own job description."). "An employer can set whatever performance standards [it] wants, provided they are not a mask for discrimination on forbidden grounds such as race or

13

age." *Id*. ("[An employer] can set unrealistic standards and fire an employee for not being able to meet them; he can . . . try to force a square peg into a round hole-and throw away the peg when it doesn't fit."); *see also Karazanos v. Navistar Int'l Transp. Co.*, 948 F.2d 332, 337-38 (7th Cir. 1991).

Moreover, Fleetwood's job descriptions are created by a consultant, WorkSTEPS, who sends a representative to visit Fleetwood's job site to perform a hands-on evaluation of the physical requirements of employees in particular jobs. *See generally Debs*, 153 F.3d at 396 (articulating that defendant's reliance upon the report of an independent investigator in making its employment decision was a "significant hurdle" for plaintiff to overcome when attempting to establish pretext). Duncan never suggests, nor produces any evidence which suggests, that WorkSTEPS acted as a mere conduit for Fleetwood's age animus, that is, its "cat's paw," in creating the material handler job description. *See Shager*, 913 F.2d at 405. In fact, the ergonomic job analysis created by WorkSTEPS that was used for the FCE is dated three months *before* Duncan first told Smith of his leg and hip pain during his visit to Fleetwood's safety station.

Furthermore, once Duncan disputed Fleetwood's job description, Fleetwood hired *another* consultant, Drier of Corporate Medical Services, to evaluate the validity of the job description. *See generally Debs*, 153 F.3d at 396. After "an extensive tour of the facility and discussion and review of the many job duties required of a material handler," Drier confirmed that the lifting requirements of a material handler depicted in the job description were accurate, emphasizing that "although a specific job task on a given day might not require physical demands listed [herein], all associates in this department are required to be able to perform any

14

part of the job.  All associates might be moved from one job task to another within the department as production demands require." (Hormann Aff. Ex. E.)  As with WorkSTEPS, Duncan produces absolutely no evidence that suggests Drier acted as Fleetwood's "cat's paw" in performing the evaluation. *See Shager*, 913 F.2d at 405.  Consequently, Drier's evaluation served to substantiate Fleetwood's job description, rather than unmask it as a lie.

Finally, even if the job description was indeed inaccurate as Duncan contends and Fleetwood mistakenly removed Duncan as a material handler, this is not enough to establish pretext. *Ptasznik*, 464 F.3d at 696 ("An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful . . . ."); *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999) ("[I]t is not sufficient for the employee to show that his employer fired him for incorrect or poorly considered reasons.  He must establish that the employer did not honestly believe the reasons it gave for terminating him."); *Mills*, 83 F.3d at 846 ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."); *see generally Guerrero v. Ashcroft*, 253 F.3d 309, 314 (7th Cir. 2001) ("[W]e are mindful that we are not a super-personnel board . . . and that we may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us.") (internal citations omitted).

Thus, no material factual dispute exists as to whether Fleetwood honestly believed its proffered reason for removing Duncan from the material handler position, and Duncan's evidence is insufficient for a jury to reasonably conclude that Duncan's age motivated Fleetwood's decision. *See Ptasznik*, 464 F.3d at 697-98; *Palucki*, 879 F.2d at 1572.  Therefore, Fleetwood's motion for summary judgment will be granted with respect to Duncan's claim of

15

age discrimination.

### B.  Duncan's Claim Under the ADA

1. <u>Applicable Law</u>

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Basith v. Cook County*, 241 F.3d 919, 926-27 (7th Cir. 2001). The term "disability" is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Wright v. Ill. Dep't of Corr.*, 204 F.3d 727, 730 (7th Cir. 2000).

Thus, even if a plaintiff does not suffer from an impairment that substantially limits a major life activity, he still falls under the ambit of the ADA if his employer regarded him as disabled. *See* 42 U.S.C. § 12102(2).  An employee is regarded as disabled if "1) the employer mistakenly believes the employee has a physical impairment that substantially limits a major life activity; or 2) the employer mistakenly believes that an actual, non-limiting impairment substantially limits a major life activity." *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002); *see also Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001).  Stated another way, the employer "must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Peters*, 311 F.3d at 843 (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

16

2.  <u>Duncan Fails to Establish that Fleetwood Regarded Him as Disabled</u>

Here, Duncan contends that he is not disabled but that Fleetwood *regarded* him as disabled.[12]  Duncan asserts that in a "regarded as" case all he is required to prove is that Fleetwood believed he had an "impairment," and consequently, he never identifies any major life activity that Fleetwood supposedly perceives him to be limited in. (*See* Resp. Br. at 10.)

Contrary to Duncan's thinking, "in order to establish a 'regarded as' claim, it is not enough for a plaintiff to show that the employer knew of the plaintiff's impairments." *Amadio*, 238 F.3d at 925; *Rooney*, 410 F.3d at 381 ("Not all impairments or conditions qualify as a disability within the meaning of the ADA.").  "The plaintiff must *also* show that the employer believed that one or more of the plaintiff's major life activities were substantially limited by the plaintiff's impairment." *Amadio*, 238 F.3d at 925 (emphasis added); *see also Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002) ("Under the ADA, the concepts of 'substantially limits' and 'major life activity' are the same whether the employee is proceeding under a claim that she is actually disabled or regarded as disabled."); *Duncan v. State of Wisconsin Dept. of Health & Family Servs.*, 166 F.3d 930, 935 (7th Cir. 1999) ("[N]ot every disability-actual or perceived-triggers statutory protection . . . . [T]he disability must be one that 'substantially limits' a major life activity.").  "[I]f the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Mack*, 308 F.3d at 782.

Thus, Duncan's failure to identify any major life activity that Fleetwood allegedly

---

[12] Duncan does not advance a failure to accommodate argument.

17

regarded him to be substantially limited in is fatal to his "regarded as" claim. *See Amadio*, 238 F.3d at 925 ("The plaintiff must select the major life activities that he will attempt to prove the employer regarded as being substantially limited by his impairment."); *see also Mack*, 308 F.3d at 782.  As a result, his ADA claim tumbles as a matter of law at the outset.

Moreover, even if Duncan had argued that Fleetwood perceived him to be substantially limited in the major life activities of "lifting" or "working," he would be no more successful.  In *Mack v. Great Dane Trailers*, 308 F.3d 776 (7th Cir. 2002), the plaintiff, who was assigned certain lifting restrictions, asserted that his employer regarded him as disabled because it viewed him substantially limited in the major life activity of lifting.  The Court rejected plaintiff's ADA claim, stating that "[a]n inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life." *Id.* at 781; *see also Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (collecting cases).

Likewise, Fleetwood apparently perceived that Duncan's lifting restrictions interfered with his ability to perform the work of a material handler but *not* with his ability to perform the work of an assembler, since he is still employed as an assembler by Fleetwood.  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Sutton*, 527 U.S. at 491.  Rather, "the impairment must substantially limit employment generally." *Contreras*, 237 F.3d at 762.  Thus, as in *Mack*, "[t]he evidence does not support an inference that [Fleetwood] believed that [Duncan's] impairment was anything more than what it was – a limitation on his ability to do certain tasks on the job." *Mack*, 308 F.3d at 783-84; *see also Krocka v. City of Chicago*, 203 F.3d 507, 514 (7th Cir. 2000) ("Employers do not run afoul of the ADA when they make employment decisions based on physical or mental

18

characteristics that are not impairments or that are limiting, but not substantially limiting such that they do not rise to the level of a disability under the ADA definition.") (internal quotation marks omitted).

Clearly, Duncan's evidence is insufficient for a jury to reasonably conclude that Fleetwood regarded Duncan as disabled, that is, substantially limited in a major life activity. *See Mack*, 308 F.3d at 783. Therefore, Duncan's *prima facie* case fails, and Fleetwood's motion for summary judgment will also be granted with respect to Duncan's claim of disability discrimination.[13]

## V. CONCLUSION

In sum, while Duncan establishes a *prima facie* case of age discrimination, his claim under the ADEA ultimately fails because he does not show that Fleetwood's proffered reason for removing him from the material handler position was a lie. Likewise, Duncan's claim of disability discrimination is also unsuccessful, as he fails to establish that Fleetwood regarded him as disabled due to his lifting restrictions.

For these reasons, Fleetwood's Motion for Summary Judgment (Docket # 17) is GRANTED. The Clerk is directed to enter a judgment in favor of Fleetwood and against

---

[13] Finally, even if Duncan had established a *prima facie* case, Duncan's claim of disability discrimination would still fail because, as concluded *supra* in Section IV.A.3, Duncan fails to produce sufficient evidence upon which a reasonable jury could conclude that Fleetwood's proffered reason for removing him from the material handler position was pretextual.

Duncan.  SO ORDERED.

Enter for the 8th day of January, 2007.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
