UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BARRY K. DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.  1:06-CV-42 |
| | ) | |
| FLEETWOOD MOTOR HOMES OF | ) | |
| INDIANA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court[1] on two motions in limine filed on May 28, 2008, one by Plaintiff Barry K. Duncan (Docket # 55), seeking to exclude certain evidence and testimony on the grounds that it contains expert opinions that were not disclosed in accordance with Federal Rule of Civil Procedure 26(a)(2), and the other by Defendant Fleetwood Motor Homes of Indiana, Inc. ("Fleetwood") (Docket # 53), seeking to exclude (1) a statement purportedly made by a Fleetwood supervisor, (2) testimony from other material handlers, (3) any evidence challenging the judgment on Duncan's claim under the Americans with Disabilities Act ("ADA"), which has since been dismissed, and (4) any allegations that Fleetwood engaged in willful conduct.[2]  Briefing was completed on the motions on June 9, 2008. (*See* Docket # 54, 56, 59, 60, 62, 64, 68.)

For the reasons provided, each of the motions in limine will be GRANTED in part and

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Fleetwood's request to preclude the admission of a statement purportedly made by Larry Irwin, a Fleetwood production supervisor, is set for a Federal Rule of Evidence 104(a) hearing on June 13, 2008, at 2:30 p.m. (*see* Docket # 65, 71), and thus will not be addressed in this Order.

DENIED in part.[3]

## II.  NATURE OF AN ORDER IN LIMINE

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

Yet, "a court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds.  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Id*. (quoting *Hawthorne Partners v. AT & T Techs.*, 831 F. Supp. 1393, 1400 (N.D. Ill. 1993)).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id*.; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").  In fact, the Seventh Circuit Court of Appeals has specifically noted that a ruling in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the District Judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion in limine is not a final ruling on the admissibility of the

---

[3]  This Order assumes the reader is familiar with the factual and legal background of this case.

evidence which is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984) (emphasis omitted).

### III.  DUNCAN'S MOTION IN LIMINE

Duncan requests in his motion in limine that the Court exclude certain testimony and documents on the grounds that they contain expert opinions that were not disclosed to Fleetwood in accordance with Federal Rule of Civil Procedure 26(a)(2).  Specifically, Duncan seeks to exclude the following: (1) the testimony of Shirley Drier, OTR, of Corporate Medical Services (a division of Adams County Hospital), and her report dated August 27, 2004 (Bates No. 429), and (2) two documents generated by WorkSTEPS (Bates Nos. 531-39).[4]  Each will be discussed in turn.

*A.  Drier's Testimony and Her August 27, 2004, Report*

As background, prior to Duncan's termination and the onset of this suit, Fleetwood retained Drier to review the validity of Fleetwood's job description for its material handlers and to compare it to Duncan's permanent medical restrictions. (App. to Def.'s Mot. for Summ. J. Ex. E.)  After touring Fleetwood's plant on August 27, 2004, and discussing and reviewing the job duties of a material handler, Drier penned a report to Fleetwood that day discussing her findings about the job requirements of a material handler and stating that Duncan's medical restrictions rendered him "unable to currently meet the physical demands of this job" and that he was "at

---

[4] Duncan also seeks to preclude a document generated by Industrial Solutions Group but the Court is uncertain what document he is referring to.  Therefore, this portion of his motion in limine will also be discussed in the Rule 104(a) hearing on June 13, 2008. (*See* Docket # 65, 71.)

high risk for further injury" if he continued to work as a material handler.[5] (*Id*.)

Duncan now seeks to bar Fleetwood from introducing Drier's conclusions and opinions as expert testimony, contending that Fleetwood did not disclose Drier as a testifying expert under Federal Rule of Civil Procedure 26(a)(2)(A) or her August 27, 2004, report as an expert report under Rule 26(a)(2)(B), and the deadline for such disclosures has since passed. In response, Fleetwood contends that Drier's August 2004 observations "are facts, not expert opinions formed after litigation has commenced" and that Drier only seeks to convey "what she did, how she did it, and her perception of those events," offering further that "Drier's testimony and her August 27, 2004 letter provide proof of Fleetwood's state of mind when it made the decision to remove Duncan." (Def.'s Resp. to Pl.'s Mot. in Limine 2-3.)

---

[5] The body of Drier's August 27, 2004, report reads as follows:

> On this date we toured Fleetwood Plant #44 with the purpose of reviewing the validity of the job description for material handler and then comparing this to the permanent restrictions set for your associate, Barry Duncan.
>
> After an extensive tour of the facility and discussion and review of the many job duties required of a material handler, it was determined that the valid physical requirements for this job are as follows:
> - Employee lifts/carries 97 pounds occasionally.
> - Employee lifts/carries 73 pounds frequently[.]
> - Employee lifts/carries 10 pounds constantly.
> - Employee push/pulls occasionally up to 109 pounds force.
> - Employee occasionally squats, kneels, and crawls.
> - Employee frequently climbs, bends, twists, stands, walks, and sits.
>
> It was determined that, although a specific job task on a given day might not require physical demands as listed above, all associates in this department are required to be able to perform any part of the job. All associates might be moved from one job task to another within the department as production demands require. Accommodations of one associate to limit the physical demands on them would put unreasonable stress on other associates within the department and may limit production abilities of the plant dependent on staffing.
>
> Comparison of Mr. Duncan's permanent restrictions to the above requirements show that he is unable to currently meet the physical demands of the job. If he continues to work in this department, he is at high risk for further injury.

(Hormann Aff. Ex. E.)

4

Federal Rule of Evidence 701 permits lay opinion testimony if the opinion is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See also Bank of China, New York Branch v. NBM, LLC*, 359 F.3d 171, 181 (7th Cir. 2004).  Thus, under Rule 701, "a lay person may offer opinion testimony providing the witness testifies to what he or she has perceived firsthand." *Sachs v. Reef Aquaria Design, Inc.*, No. 06 C 1119, 2007 WL 3223336, at *13 (N.D. Ill. Oct. 25, 2007); *Harms v. Lab. Corp. of Am.*, 155 F. Supp. 2d 891, 904 (N.D. Ill. 2001).  The fact that a witness has specialized knowledge does not preclude her from testifying pursuant to Rule 701, so long as the testimony is rationally based upon her "first-hand knowledge or observation." *Bank of China*, 359 F.3d at 181-82; *see, e.g.*, *Dereak v. Don Mattox Trucking, LLC*, No. 06-3123, 2007 WL 3231417, at *5 (C.D. Ill. Oct. 30, 2007) ("In the medical context, when testimony goes beyond the scope of treatment and the observations of the treating physician, it constitutes expert testimony.").

Consequently, Drier will be permitted to offer lay opinion testimony for the truth of the matter asserted to the extent she testifies "to that which [s]he perceived firsthand" during her visit to Fleetwood on August 27, 2004. *Harms*, 155 F. Supp. 2d at 904.  In that vein, according to Fleetwood, Drier "toured the Fleetwood facility where she personally observed the tasks material handlers performed on a daily basis." (Def.'s Resp. to Pl.'s Mot. in Limine 2.)  "She saw them lift and carry heavy items, items that she herself then weighed.  And, she tabulated the frequency of occurrence based on what she witnessed." (*Id*. at 2-3.)  However, to the extent Drier's testimony is *not* based upon her perceptions during her visit to Fleetwood, but rather reflective of

5

her specialized knowledge due to her training and experience in corporate medicine, her testimony will be precluded for the truth of the matter asserted due to Fleetwood's failure to timely disclose her as an expert witness under Federal Rule of Civil Procedure 26(a)(2)(A). *Bank of China*, 359 F.3d at 182.

Yet, the opinions that Drier conveyed to Fleetwood as a result of her plant visit are obviously probative of Fleetwood's state of mind when it made the decision to remove Duncan, a pivotal fact in issue in this case. *See generally Chiaramonte v. Fashion Bed Group, Inc., a Div. of Leggett & Platt, Inc*., 129 F.3d 391, 396 (7th Cir. 1997) ("To succeed in an ADEA claim, a plaintiff must establish that he would not have been terminated 'but for' his employer's *intentional* age-based discrimination." (emphasis added)).  And, considering that the probative value of this evidence is obviously significant, it is not substantially outweighed by the factors catalogued in Federal Rule of Evidence 403, such as jury confusion, delay, or waste of time. Consequently, pursuant to an appropriate limiting instruction, Drier may testify about the information and conclusions she communicated to Fleetwood in order to show its effect on Fleetwood's conduct, as it ultimately does not matter in this case whether Drier's conclusions are actually true. Fed. R. Evid. 803(3); *see, e.g.*, *Alexander v. CIT Tech. Fin. Servs*., Inc., 217 F. Supp. 2d. 867, 881 (N.D. Ill. 2002); *Huff v. Uarco, Inc*., No. 94 C 7585, 2000 WL 1810000, at *2 (N.D. Ill. Dec. 11, 2000); *Conrad v. P.T.O. Servs., Inc*., No. 95 C 2622, 1996 WL 296652, at *5 (N.D. Ill. June 3, 1996); *Amsted Indus. Inc. v. Nat'l Castings, Inc*., No. 88 C 924, 1990 WL 106548, at *32 n.10 (N.D. Ill. July 11, 1990).

Turning to Drier's written report (Bates No. 429), the first two paragraphs of the report are ostensibly based upon Drier's perceptions from her visit to the plant, considering that, as

explained *supra*, Drier apparently observed the tasks that material handlers perform; watched them lift and carry heavy items, items that she herself then weighed; and then tabulated the frequency of occurrence based on what she witnessed.  Thus, these paragraphs are admissable as lay opinion for the truth of the matter asserted under Federal Rule of Evidence 701.

In contrast, the third and fourth paragraphs of Drier's report do not appear to be based upon her first-hand observations at the visit, but rather seem grounded in hearsay or Drier's specialized knowledge in corporate medicine, respectively.  To elaborate, the third paragraph, which speaks of job rotation over a period of time and production output, seems on its face to be more typical of information that someone at Fleetwood *relayed* to Drier, rather than information that she personally observed in her single-day visit to the plant, and thus it would constitute hearsay.[6] *See* Fed. R. Evid. 801; *McCammond v. Oxford Bank & Trust*, No. 95 C 2213, 96 C 1970, 1998 WL 708796, at *4 (N.D. Ill. Sep. 30, 1998) ("Lay opinion testimony is nonetheless governed by the hearsay rule.").  And, the final paragraph, in which Drier opines about Duncan's risk for further injury and whether he is able to meet the physical demands of the job, strays into the realm of an expert opinion, particularly considering that Drier never evaluated Duncan or observed him perform the job of a material handler. *See, e.g., Dereak*, 2007 WL 3231417, at *5.  Therefore, the final two paragraphs of Drier's August 27, 2004, report cannot be admitted for the truth of the matter asserted.

Nevertheless, like her testimony, Drier's report indeed has probative value with respect to Fleetwood's state of mind when it made the decision to remove Duncan. Fed. R. Evid. 803(3); *see, e.g.*, *Alexander*, 217 F. Supp. 2d. at 881; *Huff*, 2000 WL 1810000, at *2; *Conrad*,  1996 WL

---

[6] Of course, if Drier can testify that she did, in fact, witness first-hand the activities that she describes in the third paragraph of her report, such evidence would be admissible as lay opinion for the truth of the matter asserted.

296652, at *5; *Amsted Indus.*, 1990 WL 106548, at *32.  Moreover, as explained *supra*, the probative value of this evidence is not substantially outweighed by risks of jury confusion, delay, or waste of time. *See* Fed. R. Evid. 403.  Consequently, Drier's report may be offered with an appropriate limiting instruction for the purpose of showing its effect on Fleetwood's conduct.

In sum, Duncan's motion in limine seeking to bar Drier's testimony and her August 27, 2004, report is DENIED in part and GRANTED in part.  Drier may offer lay opinion testimony for the truth of the matter asserted to the extent she testifies about that which she perceived firsthand during her visit to Fleetwood on August 27, 2004; furthermore, she may testify about the information and conclusions she relayed to Fleetwood pursuant to an appropriate limiting instruction for the sole purpose of showing its effect on Fleetwood's conduct.  Likewise, the first two paragraphs of Drier's August 27, 2004, report may be admitted for the truth of the matter asserted but the remaining two paragraphs may be admitted only upon an appropriate limiting instruction for the sole purpose of showing its effect on Fleetwood's conduct.

### B.  The WorkSTEPS Documents

Duncan also seeks to exclude two documents generated by WorkSTEPS – an "Authorization for Job Specific Testing" (Bates No. 531) and a document entitled "Material Handling" (Bates Nos. 532-39), which ostensibly is a job description for Fleetwood's material handler position. (*See* App. to Def.'s Mot. for Summ. J. Ex. A.)  He contends that these documents are "conclusions and findings in the nature of expert opinions and that admission of the exhibits would violate Fed. R. Evid. 702." (Pl.'s Reply Br. in Supp. of His Mot. in Limine 1.)

Yet, as Duncan concedes in his reply brief, the WorkSTEPS documents do not constitute expert reports within the meaning of Federal Rule of Civil Procedure 26(a)(2)(B). (*See* Pl.'s

Reply Br. in Supp. of His Mot. in Limine 15.)  "[O]nly those witnesses 'retained or specially employed to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B)." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756-57 (7th Cir. 2004) (quoting Fed. R. Civ. P. 26(a)(2)(B) (emphasis omitted)); *see Merrill Lynch Bus. Fin. Servs., Inc. v. Gray Supply Co.*, Nos. 91 C 1449, 91 C 1554, 1991 WL 278305, at *2 (N.D. Ill. Dec. 23, 1991) ("[E]xpert witnesses are witnesses whose information is acquired in preparation for trial.").  The record reflects (and Duncan does not suggest otherwise) that these documents were generated by WorkSTEPS prior to Duncan's termination and thus prior to the onset of this litigation. (*See* Hormann Aff. ¶ 3.)

In fact, Fleetwood seemingly does not seek to admit this evidence for the truth of the matter asserted, but simply as evidence to "create the foundation of why Fleetwood did what it did." (Def.'s Resp. to Pl.'s Mot. in Limine 5.)  Consequently, like Drier's report, the WorkSTEPS documents are significantly probative of Fleetwood's state of mind when it terminated Duncan and thus may be admitted upon an appropriate limiting instruction for the sole purpose of showing its effect on Fleetwood's conduct. Fed. R. Evid. 803(3); *see, e.g.*, *Alexander*, 217 F. Supp. 2d. at 881; *Huff*, 2000 WL 1810000, at *2; *Conrad*, 1996 WL 296652, at *5; *Amsted Indus.*, 1990 WL 106548, at *32.  Of course, if Fleetwood can provide a lay witness who can establish a proper foundation for these documents, then the Court may revisit whether a limiting instruction is necessary.

Therefore, Duncan's motion in limine with respect to the WorkSTEPS documents is GRANTED in part and DENIED in part.

### IV.  FLEETWOOD'S MOTION IN LIMINE

Turning to Fleetwood's motion in limine, Fleetwood requests that the Court preclude several types of evidence: (1) testimony from other material handlers; (2) any evidence challenging the judgment on Duncan's ADA claim; and (3) any allegations that Fleetwood engaged in willful conduct.  These topics will each be discussed in turn.

### A.  *Testimony From Other Material Handlers*

Fleetwood seeks to bar testimony from other material handlers to the extent it is "about previously undisclosed statements regarding discrimination, or about their opinions about the material handler job requirements." (Def.'s Mot. in Limine 3-4.)  Fleetwood's request is non-meritorious.

More particularly, as to Fleetwood's request to bar any previously undisclosed statements by material handlers regarding discrimination, in the event a party fails to supplement previous responses or disclosures as required by Federal Rule of Civil Procedure 26(e), then under Federal Rule of Civil Procedure 37(c)(1) the party is precluded from introducing the witness or evidence at trial.  At this juncture, however, Duncan reports that he has fully complied with his discovery obligations, stating that "[h]e disclosed what he knew at the time, and he has never supplemented his disclosures because he's never learned anything that he didn't initially disclose." (Pl.'s Br. in Opp'n to Def.'s Mot. in Limine 9.)  Furthermore, Duncan is correct that it is "is well within his evidentiary rights to wait until trial to inquire [for the first time] about certain facts." (*Id*.)  Thus, Fleetwood's request is premature and will be denied.  Nonetheless, Duncan is reminded of his duty under Federal Rule of Civil Procedure 26(e) to supplement in a timely manner any prior disclosure or response that is incomplete.

As to Fleetwood's request to preclude testimony by material handlers about their job

10

requirements, it too will be denied.  As explained *supra*, Federal Rule of Evidence 701 permits lay opinion testimony if the opinion is rationally based on the perception of the witness, helpful to a determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702. *See Bank of China*, 359 F.3d at 181.  Consequently, material handlers may offer lay opinion testimony as to what they "witnessed firsthand," *Sachs*, 2007 WL 3223336, at *13, which includes their own perceptions of the job duties that they perform, or for that matter, do not perform, and what tasks they witnessed Duncan perform on the job.  Furthermore, there is no indication that the relevancy of this information is substantially outweighed by the factors in Federal Rule of Evidence 403, such as jury confusion, delay, or waste of time.  Of course, as Duncan acknowledges (*see* Pl.'s Br. in Opp'n to Def.'s Mot. in Limine 10), material handlers are *not* qualified under Federal Rule of Evidence 702 to testify as to whether Duncan can medically perform the job requirements of a material handler.

Therefore, Fleetwood's motion in limine with respect to testimony by material handlers is DENIED in all respects.

### B.  Duncan's ADA Claim

Fleetwood next seeks an order in limine precluding Duncan from "introducing evidence or testimony challenging or contradicting the judgment on Duncan's disability claim." (Def.'s Mot. in Limine 7.)  Duncan does not oppose Fleetwood's request, stating that he "has no intention of trying a resolved claim." (Pl.'s Br. in Opp'n to Def.'s Mot. in Limine 10.)

Therefore, Fleetwood's motion in limine with respect to this evidence is GRANTED.

### *C.  Allegations That Fleetwood Engaged in Willful Conduct*

Finally, Fleetwood requests to bar any allegations by Duncan that it engaged in willful conduct.  Fleetwood's request, however, fails to warrant an order in limine.

An employer's conduct is considered "willful" under the Age Discrimination in Employment Act ("ADEA"), only if the employer knew its actions violated the ADEA or demonstrated a reckless disregard for whether its actions violated the ADEA. *Holzman v. Jaymar-Ruby, Inc*., 916 F.2d 1298, 1305 (7th Cir. 1990).  Here, Fleetwood contends that its "conduct exhibits no recklessness and no knowing violation of the ADEA." (Def.'s Mot. in Limine 9.)

Yet, Fleetwood's request to bar any allegations of willfulness is premature at this stage of the proceedings.  Essentially, Fleetwood is requesting that the Court enter a directed verdict on the issue of willful conduct before Duncan even presents its evidence in this case. *See generally McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 515 (7th Cir. 1993) ("The standard for determining whether a j.n.o.v. should be granted is *whether the evidence presented*, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." (emphasis added)).  Moreover, the time for seeking summary judgment on this issue has long since passed. *See, e.g., Dowe v. Nat'l R.R. Passenger Corp*., No. 01 C 5808, 2004 WL 887410, at *11 (N.D. Ill. Apr. 26, 2004) (denying defendant's motion in limine where the defendant sought to eliminate claims "[u]nder the guise of a motion in limine" rather than through a timely motion for summary judgment).

Therefore, Fleetwood's motion in limine seeking to bar any allegations of willful conduct

by Duncan is DENIED.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's and Defendant's motions in limine (Docket # 53, 55) are each GRANTED in part and DENIED in part as set forth in this Order.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury.  Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for June 12, 2008.

                                        S/Roger B. Cosbey
                                        Roger B. Cosbey,
                                        United States Magistrate Judge